Morning, Your Honors. Kevin Kiley on behalf of Defendants Appellants Jackson County and Danny Jordan. Your Honors, this Court, following U.S. Supreme Court precedent, has said on a number of occasions that there is no federal constitutional right to be free from changes in state land use laws. Counsel, I guess the core of this for me is whether the subsequent ballot measure that passed was a change in land use laws or whether it was a change for these people that already had their deals in an obligation to pay money. The state can change zoning. It can take your agricultural land and turn it into commercial land. But if you have a promise of money, then it can't change the promise. And if you have given up your entitlement to money for something else that you want, I don't know if it's the same thing as just changing a land use law, if they change to something else that you want. And I was about to say, Your Honor, that that statement that I just made is the backdrop for this case, because the issues here are, as the Court suggests in your question, threefold. One, was there a state law contract between the plaintiffs and the county? Two, if there was such a contract, was that subject to challenge under the Contracts Clause in the Constitution? And then three, a separate alternative holding in the district court was that the so-called Measure 37 waiver can amount to a judgment that raises separation of powers concerned under Oregon's Constitution. So I agree that whether or not this was a land use law per se is not dispositive. It does come into play in the context of the exercise of the state's police power, which we believe is an independent justification and exempts this case from Contracts Clause concerns. But whether or not it was a land use regulation per se or some other exercise of the police power I don't think is terribly relevant. If I buy land that's unzoned that I can do anything on it, and while I'm not doing anything on it, the zoning changes to residential, I don't have a cause of action. But if the county owes me a million dollars and we settle the debt with the county agreeing to zone my land commercial, and then I go out and I borrow $5 million to build some commercial facility on the land in reliance on that change, I think that's more analogous to this case, isn't it? Ah, but that raises the question, Your Honor. Measure 49 has a procedure in the law for precisely the situation Your Honor raises. Measure 49 changed the remedies available to Measure 37 claimants. And it also by definition and in the statute purported to accommodate the public interests in Oregon's lands as well as the private concerns of landowners in this balanced new law. But it said that if there was a vested right by virtue of the issuance of the Measure 37 waiver, the Measure 49 establishes a so-called vested rights procedure to assert a claim for that. This thing's really hard to read. Tell us where. Bear with me just a moment, Your Honor. While you're looking, don't you have to be building or making use of the property in order to get the benefit of that? It says to the extent that the claimant's use of the property complies with the waiver, you're allowed to complete and continue the use described in the waiver. Or has that not been determined by the State court? The State court – I've got two questions here. Let me answer yours first because I think it may be helpful. The State court, the Oregon Supreme Court, in Corey addressed that question, Your Honor. It said, in an opinion by Justice Gillette, that what the backdrop to that is, that if, for example, the plaintiffs had a partially constructed house in reliance on the Measure 37 waiver, that that's the classic situation in which a vested rights claim under Oregon common law could be asserted and follow whatever process then the statute sets up to resolve that claim. The court then said that it may extend broader than that to include paying architect's fees, permit fees, that kind of thing. But that was not before the court, and if the parties had such a claim, they should pursue that as a common law vested rights claim under whatever procedures were established by the jurisdiction in question. And here in the record is the – there is an ordinance that the Jackson County passed for precisely this purpose. It allows a common law vested rights claim, if somebody thinks they have one, to be pursued, and then the result can be challenged by a judicial review in Oregon State Court. They did not do that. Now, back to the question that Judge Keinfeld asked me with respect to Measure 37. I'm not sure what you have there. I thought it was Measure 49 you were going to tell me about. Well, I can't remember now what the question was. I'm sorry. Oh, it was about the – You said 49 protects some vested rights and it has a procedure, so it wouldn't protect this one. Right. And that is – that's Section 5, Subsection 3 of Measure 49, Your Honor. Thanks. And that's what you just explained with what Corey held as to the scope of that. That's right. So not every waiver that's been obtained by someone would be protected under 49, just those where there's that – the vested right as far as it goes under Oregon law. Is that correct? That's correct. In fact, Corey expressly held that, saying that Measure 37 waivers per se, because Measure 49 changed the law and changed the remedies, that those have no continuing viability under Oregon State law. If you have a claim that there was a right vested prior to the Measure 49 becoming effective, then you must pursue it under Subsection 3 of Section 5 of that measure and that's the remedy. I had read it differently. I thought all that this language meant about to the extent the claimant's use of the property complies with the waiver means if they gave you a waiver so you could build a six-floor apartment building and what you actually did was build a strip mall, well, you're not complying with the waiver. But you're saying they actually have to be engaged in the use. And I thought vested right just sort of left it open to whether there was a deal that vested a right or some other conduct that vested a right. Well, I'm saying that the Corey court pointed out that the classic example of a vested right determination under common law is a partially constructed house. Justice Gillette went on to say in the opinion that the plaintiffs are free to file a claim under the vested rights procedure and argue that it extends broader than that. Maybe you can clarify for me the three time periods prior to Measure 37, the in-between period between 37 and 49, and then post. And let me just be specific about what I'm asking about. So prior to Measure 37, if there were restrictions on land use and a landowner believed that the restriction was such as to impair, to amount to a ‑‑ A taking. It's a regulatory taking, right? But let's just call it a taking. Sure. Okay. What rights under State law ‑‑ I realize there are Federal remedies possible perhaps. Let's just put those aside. What rights did the landowner have under State law? What happened with respect to that in between, and how is it the case now? Well, under State law, assuming that the regulation was validly enacted, not subject to some other procedural or substantive challenge, not relevant, and it was in place, then under State law the landowner had no remedy. They would only have a remedy if, as Your Honor suggested in the question, the regulatory taking was sufficiently egregious to amount to a taking under the Constitution. That is essentially all economic viability was destroyed. I realize that maybe in those circumstances there might have been or might still be a Federal remedy. Did Oregon law provide a remedy for those situations? No. So whatever rights you had for taking claim prior to Measure 37, you would have had to vindicate under Federal law? Well, perhaps you could ‑‑ and I don't know the answer to this, frankly, Your Honor, but perhaps they could have asserted a claim under the Oregon Constitution. I think Your Honor wasn't really getting to that point, though. The point is, was there some statutory, I presume, statutory procedure to say, hey, you took too much of my land? The answer is no. Okay. 37 changed that, right? 37 said if there is a regulation, you now have a remedy. And the remedy, if I understand it correctly, was you could ‑‑ they could either pay you money or they could let you get out of the county or whatever. The entity could either pay you for the diminution in value or they could let you build, right? They could. They could give you a waiver. Yes. I mean, technically everybody on both sides of this in the courts have called it a Measure 37 waiver. I think that's reasonable shorthand. I don't think it actually fits the classic definition of a waiver we all learned in law school. But in any event ‑‑ Right. Right. I understand. They could exempt you from the ‑‑ Yeah. The precise language ‑‑ But there were two possible ways it could go, right? You could either leave the regulation in place and pay your money or they could say we will let you build a spider regulation. That's correct. And that decision was solely with the county. That's my next question. And the decision as to which one of those remedies to provide was with a governmental entity. Solely with the government, yes. Okay. So some people filed soft relief under that and got the county chose to give them a waiver rather than pay them money. Again, we call it a waiver. Give them an exemption. Yes. Correct, Your Honor. Okay. And, again, that was the county's choice as to do one or the other. That's also correct. Okay. 49 comes along and changes the regime. And now what is the regime under 49? The regime under 49 is that the remedies, the pursuit of remedy under the waiver, pursuant to the waiver, was going to have to be now under Measure 49. The remedies changed. And ‑‑ I'm not talking about transitional cases. I'm just saying now, let's say, you know, a new landowner and restriction is passed on building, what happens now? Well, the ‑‑ assuming that you're not one of the transitional parties like the plaintiffs here, I'm not an expert on this measure. It's quite lengthy. But, in essence, there are remedies available. There are development rights that are available. They are more limited than they were under Measure 37. And, again, the choice is ‑‑ the choice is up to the county to make? There is ‑‑ in any land use decision, there's going to be an element of choice in the sense of that some administrative body is going to have to make a decision, yes, on whether to approve or prevent, whether to grant an exception, or whatever the panoply of issues are in the land use case. Is it correct that when they do follow the rule, the Measure 49 procedure, the county can take away all your rights to any kind of development by zoning your land agricultural? Well, Your Honor, I'm not a land use expert. I would say that it's a misnomer to say that Measure 49 takes away all of a landowner's rights. My guess is my esteemed colleagues on the other side here will not agree with that. But that issue is not before the Court today in any event. Nobody here, no plaintiff. I thought one of the claimants here had land that was totally useless for agricultural purposes and they zoned it agricultural so she can't build her gas station. That was prior to the enactment. That backdrop that Your Honor is referring to there is one of the plaintiffs, as I understand it. And she, that's her beef about the way things existed prior to the enactment of Measure 37. I understood your question to be about what if somebody is new and they have a claim under Measure 49. They're not a preexisting claimant. They're not one of these interim claimants that we're dealing with in this case. It's somebody over here under Measure 49. I want to make sure I understand this, and I haven't any confidence that I do. And I thought that if you had land that before 37 or when 37 came in, you could either get compensation or negotiate a waiver. And the county didn't want to pay you the money, and they negotiated a waiver so you could build a gas station. And then when 49 comes in, if you hadn't built your gas station yet, they can zone it agricultural so you can never build a gas station. That's not correct, Your Honor. Okay. The problem with your question is the use of the word negotiate. And, frankly, that was an underlying problem with the district court's opinion as well. There was no negotiation here. The only choice that the plaintiffs made in this case was to, A, whether or not to file a claim, and then, B, whether or not to continue to pursue it or drop it. The decision on whether to evaluate and pay monetary compensation or give compensation in the form of a waiver was solely with the State. Well, the reason I thought there was negotiation is I looked at one of these waivers in the excerpts, and it's really long, complex, and highly individualized. It is. But I could say the same thing about some of the opinions in this court, particularly some of the BDA cases that I read yesterday. The importance of it being individualized and long and complex is that it looks as though it has to be negotiated. They don't just have a form waiver that they give to people if they don't feel like paying the money. Well, it resulted from an administrative process, but it was not a matter of negotiation. The plaintiffs gave up nothing that they didn't already have and vice versa. And the county had one choice, to issue a waiver or to pay monetary compensation. They opted for the waiver procedure. And our point, of course, is that that is not, did not create a contract under Oregon law. And I see that my time is up, so I. Thank you. Thank you, Your Honor. We'll hear from the other side. May it please the Court.  Respondent, sir. Could you help me on something that's troubling me? Yes, sir. I can see a couple of different readings. If I was just reading the words of Measure 49, my reading might be different from Corey's reading. But I think I have to take Corey's reading to tell me what Oregon law is, what state law is. And I'm wondering whether what it comes down to is before 37, people are subject to all kinds of zoning restrictions and they don't get any money on account of the diminution of value of their property on account of them. 37 comes in and the zoning restrictions are lifted and then 49 comes in and pretty much vitiates 37, except for people who, according to Corey, already have something underway. Let's see. I think their wording in Corey is, I think that's common law vesting, Your Honor, is partially finished project. Do you have to get your gas station going between 37 and 49 in order to have any vested right? Well, I think the answer to that turns on your definition of vested. And what's happening here consistently is a transposition of the equitable concept of estoppel. Somebody has undertaken a project. Everybody knows about it and they're going forward and spending money. I agree with you. Corey is basically an estoppel motion. And that's what Corey was talking about, common law vesting. Our concern and the concern presented to the Supreme Court was the vesting that was accomplished when this cause of action was finalized in the form of a judicial or tribunal accreditation. The claims were made. The county investigated for 180 days. Hearings were had. And the ultimate order and decision issued in the form of what we in total call a waiver. But the biggest important part of that is the finding that this claimant is, in fact, entitled to monetary compensation. Without that finding, there's no authority granted the county to waive any registration. Could I just take you back a step and maybe you could address something that's troubling me? This is a contracts clause case. And when I look at our case law, the Supreme Court's case law, it says there's a presumption against the creation of a contract in legislation. And the Supreme Court directs us to look for language of contract, like the word contract or covenant. Where should I look to find that language of contract in this case? I believe that the language of contract rule or standard that you're addressing applies to the situation where someone is arguing that a law such as the PERS law in Oregon by the legislature, in fact, creates a contract. It has never been our contention that that was the case. So you're not saying measure 37 created a contract. Is that correct? No. Measure 37 did not. And the waiver, which is issued by the administrative tribunal, are you saying that the waiver itself, the decision, is a contract? That's the argument. See, as was noted, liability was established. The liability to compensate in money for the diminution in value was established against the county. And our position is, of course, that that's final order. It's a judgment. In response, once that's established, then the county had the authority under state law to waive the regulation leading to the liability. Short of the finding of liability, they had no authority to do that. So that was, from our point of view, in accord and satisfaction. It was a settlement agreement of what was owed. I think you've got one of these waivers at tab 63. Maybe you have others. Maybe you could guide us through it and show us the offer, acceptance, consideration, things that make it a contract. I guess I'm looking right now at Jackson County's excerpts, Volume 2 of 2, but you may have another one somewhere. The one that I've got from them is all listed on ERs. And you want to... I'm looking at ER 63-... Is this Cochran's Measure 37 claim? That's the one I happen to find. Just show us how to read it consistently with your argument. Well, you're not saying that the waiver itself is a contract. I think you say in your briefing that the issuance of the waiver wasn't the contract. It sounded more like there was some sort of implied contract. Am I understanding that right? I would say that the best definition is that the waiver is the evidence of the existence of the contract. But this, Doc, you're saying that the waiver order or this board order... Yes. Evidence is that some oral contract was made. That there was a specific agreement. Well, really, an exchange of consideration, which is what is the basis of the contract. Well, but exchange of consideration is not enough. You have to actually have an agreement. You have to have a meeting of the minds. You know, you can call anything anything else, but where was the negotiation? Where was the agreement? Well, our whole position on that, the lack of negotiating power, which everybody acknowledges is what's going to happen is totally at the discretion of the county. All that establishes that we've got a gross adhesion contract. What's the contract exactly? Beg your pardon? What is the contract? If the waiver is not the contract, it's just evidence of the existence of a contract. And the contract has to be something else. The contract is the exchange of consideration, the promise not to apply the specific identified applicable zoning regulations in exchange for the avoidance of the obligation to pay the money. And that's not in the waiver? What did your clients give up? What our clients gave up is they gave up the right to the money. Where did they give it up? I'm sorry, where? I mean, let's say they'd gone forward with this. The county had gone forward and they'd gotten the waivers and all that. What is it? Where's the contract that they would have prevented them from now suing for compensation? Well, they could, if they brought the suit, the county could come in and say, oh, no, look, they gave it up. Here's their writing. They gave it up. Where is that? At any time, the final order was subject to, well, after 180 days, the final order was subject to contest in the circuit court. So from the time of filing to the issuance of the order to another 45 days after that, there was opportunity for anybody dissatisfied with the order to take it into the appropriate court, in this case the circuit court, and fight it. That's what all of the published cases. I understand. But did you understand my question? Where is their agreement not to seek compensation? Their agreement not to seek compensation is evidenced in their failure to take issue with the order. They accepted it and they went about their business. An adhesion contract is exactly that. It's a take it or leave it thing. And that's what was presented. It's still a contract. Counsel, I'm with you on a lot of your general statements, but I got lost. Once you told me that the waiver agreement, this document, for example, with the Cochran's that runs for, I think, 21 pages, is not the contract. It's evidence of a contract. And now I don't know what the contract is. What's the deal? And I don't mean general terms, that there's consideration. Like, if you want to talk about consideration, say exactly what the consideration is. What is the deal? What is the Cochran's deal, for example, if it's not this lengthy waiver document? On the format used in all of these various and sundry waivers issued by Defendant County, those are the same. We travel through a list of whereas. A lot of whereas. And then there's a now therefore. The claim is declared to be valid. And then they have about the floodplain overlay and the national hazard element. And in order to allow them to use the property, they're going to suspend various requirements. And what they're supposed to do before they initiate a land use application and that the order is recordable. But I gather you're saying that's not the contract. That is the promise. The not to apply the floodplain overlay. Well, excuse me. In order to allow James Cochran to use, I'm back up at two, permitted at the time of acquisition of his property standards and criteria with the Jackson County Land Development Ordinance and Comprehensive Plan applicable to this property shall not be applied. So that's an application. That's the promise. That's the application of the Measure 37 to the facts of that case. Exactly. Okay. So it's sort of adjudicatory as you argue in the separation of powers. That a promise works as consideration. That is a promise. They took that promise and recorded it against the deed to this property, making it, if you will, an accomplished fact. So what you're saying is that this waiver agreement is a promise and the consideration is they let their claim for compensation lapse beyond the statute of limitations. Time for appeal. Yes. You're saying that was done orally or it was implied that they wouldn't compensate. But I didn't see in Measure 37, it seemed that it was, as opposing counsel said, that was the choice of the county whether to provide money value for the diminution of value or to provide this exemption. Is there something I was missing in Measure 37 which put the choice in the hands of the landowner? No. And actually, what Measure 37 does, if you read it carefully, we argued it in the court below. It is a statute of inverse condemnation applied and applicable to a partial regulatory taking. That's the authority. That's Section 1. Section 2 defines the compensation to which the claimant is entitled as money, the actual cash value of the diminution. Now, that's what the entitlement of the claimant is. It does give, as an inverse condemnation statute usually does, it does give the claimed upon entity the ability to avoid the liability by waiving the problem waiver. What we just heard was that that liability came into existence with Measure 37, that prior to that, at least under State statutory and regulatory law, the landowner wouldn't have a claim for a regulatory taking. Precisely. Do you agree with that or do you disagree? Well, the basic history of these people, and actually the only ones who can be impacted, are people who acquired their property back prior to the early 70s when comprehensive statewide land use regulation came into being. These people, their claimants, were looking at no zoning. What they called Senate Bill 100 created this framework and dropped these regulations upon them. And there was no recourse because the diminution in value is only a partial taking, except in the rare case where all value is gone. So there was no action on the federal side. There is no action in inverse condemnation on the state side because that, again, wouldn't fit the Oregon Constitution version any more than the federal. Measure 37 created a new entitlement. And once that entitlement was in place, if the claimant were able to prove up his case, Well, it became then what I call a protected property right. But the law changed. It happens all the time. I don't see ñ this just looks to me like what you've got is changing regulations. Well It doesn't partake of contract at all. There was no deal with the state or the county or anything else. You can sort of try to construct it. But why isn't this just a case of changing regulations? The whole issue of the case can really be summed up fairly simply. A protected property interest was created by virtue of the fact of these claimants going through the process, proving up their entitlement to a specific benefit. Now, you could call that a claim for compensation, validated, accrued, invested constitutionally, or you could call it a judgment, or you could call the ultimate swap for the waiver a contract. In any event, those protected property interests have constitutional defenses against retroactive cancellation, which is what 49 and our beef with 49 is all about. Will you still have your takings claim, you know, assuming that this is ñ is there still a takings claim pending before the district court in this case? I don't think I understood the question. So you could argue that Measure 49 took away a property interest that was created by Measure 37 under the Fifth Amendment, under the takings clause? Actually, there are three sets of protections against this retroactive cancellation. Very definitely sitting in the court below is an action on a Fifth Amendment taking. Okay, that's what I was asking. Thank you. And that's that whole body of Supreme Court law that I gave you, from Roth most recently all the way back to 1796. That's Fifth Amendment. You also have the doctrine of separation of powers relied upon by Judge Panner. And finally, you have the contracts clause, very specific prohibition against this retroactive cancellation of accrued interest. When we had the briefs, Judge Ikuda asked you a simple question. Do you still have a takings claim pending? And you managed in all that wording to say yes, but the answer to her question is yes. You still have a takings claim pending, right? Yes. Okay. So all these takings concepts that you're bringing in, this argument here, have really no bearing at all. If your clients had invested right under State law, and if Measure 49 took it away from them, then you've got a takings claim, and that will be adjudicated. But that's not before us. What's before us right now is the claim of under the contracts clause. And to prove a claim under the contracts clause, you have to show a contract. You have to show that your clients entered into some sort of agreement with the government entity. And I'm still finding it a tough time seeing where there was any kind of agreement. I think perhaps we may be hanging up on the concept of offer. No, it's the concept of contract. I'm looking for the deal. Yeah. We acknowledge you have a right to $100,000. We agree as follows. You give up your right to $100,000, and we give up our right to prohibit you from building a gas station. That's sort of what I thought these waiver agreements were, except they're a whole lot longer and they don't exactly say that. Well, what they don't say this for that. That's true. I'll grant you that. The situation of long and involved and detailed, it's because the law required application of specific criteria to the facts. Hold on. Let me back up a minute to why I raised that. There's some reason why you don't want to stand or fall on the waiver agreement being the contract, and I don't know what it is, so you need to educate me so I understand better. It may be semantics, Your Honor. The bottom line here is that the essence of contract is trade. And as Judge Panner determined, this to be a settlement agreement. If I have won and prevailed in court and gotten a judgment for liability, I can compromise that judgment and accept something less. Sure. I owe you $10,000 for fender-bender. I'll give you the $10,000. You acknowledge I no longer owe you $10,000 for messing up your car. Precisely. And that's what I thought this waiver agreement was supposed to be. That's exactly what it accomplished. Except you told me it's not, and now I'm confused. The transaction is a contract. The transaction is a contract. It's all that you can call it because of the tradeoff of the quid pro quo. It was offered, if you will, on a take-it-or-leave-it basis, making it a gross adhesion contract. I don't even see where that matters. I mean, if the insurance company says $10,000 for your property damage to your car, take it or leave it, it's a deal. It doesn't matter. It still ends up a deal. Well, but you can not take it. You have a choice of not taking it. That's exactly right. I don't sign it. I will go to court instead. But you didn't have that choice here. They didn't say, you know, here's a deal. You got to agree to it. They just said, this is what we're going to do. And you can appeal, which is what you can do with an administrative decision. But that is not a contract, unless you want to say that every time we issue an opinion, we have entered into a contract with the winning party or the losing party. And I don't think, you know, I'd be very liable because I've written a lot of opinions. You know, I've had a lot of contracts out there. As the point, showing the Palin case, which we referenced. I'm sorry? In the Palin case that we referenced down below, the county could pay. And the county made the decision. The county says, we're going to waive. If the claimant, dissatisfied, is not willing to accept that offer, then all they have to do is walk across the street to the county circuit court and reinitiate the action in the circuit court. If you, if they issue this waiver within the 180 days, if they comply with the Measure 37 requirements, and the landowner appeals, would they be able to say, I didn't really want the waiver, I wanted the money? Or could they only say, the scope of the waiver is not accurate, or there's some error in what the exemption was I got? Could they, which could they do? Could they say, I didn't want the waiver, I wanted the money, and get that on appeal? I can see no reason why not, except that they would probably lose. Well, they could ask for New Jersey, too, right? They could ask for New Jersey to be thrown out as well, right? They could ask for anything. That won't add to the value, would it? No. I was asking whether the statute would allow them. I just figured out why you're arguing it as you have, and what the difficulty is. And tell me if I've got this right. They don't exactly come to the landowner and say, we owe you $100,000. We'd like to work this out because we don't have $100,000. So what we're going to do is let you build your gas station, and in exchange, you give up your claim for $100,000. They don't do that. Instead, what they do is they unilaterally say, you can build a gas station. And the effect of that is to eliminate the damages that give rise to the landowner's entitlement to $100,000. It's a little like if, instead of making a deal with you, the insurance company just snuck into the body shop before you got there to pay your bill, and they paid your bill for you so that you have no claim for the damage to your car. So they took a hammer and hammered out your fender. It's kind of like when they send you a check without a release language on the back. They've eliminated your damages, so they've eliminated your claim without making a deal with you. Isn't that what's happening here? That's exactly what's happening. I think it's entirely consistent with the concept. Now, when the insurance company does that, they do that because they know that some of the victims of collisions won't want to sign a release. But they know that by eliminating the damages, they can cut off lawsuits almost as effectively as if they got a release. And the consequence is there's no deal. There's no agreement between the insurance company and the car owner. All there is is an elimination of the damages. Why aren't you in that same situation? Do you understand my question? I may not have made it clear. I would bring it up this way. See, I read 37 as kind of a homesy and bad man thing. You have to pay the landowner. But you can avoid paying the landowner just by avoiding imposing a burden on him. The difficulty there is the sequence of adjudication. The county has no authority whatever to waive the land use ordinance or zone. Can't do it. Until and unless the peculiar circumstance described in Measure 37 that the county found itself owing a legitimate, valid claim for compensation. I didn't understand. Say the same thing again in different words. I didn't understand what you just said. Okay. The sequence had to be that the county had to evaluate the claim, find it to be a valid, accrued, vested, legitimate entitlement. Only then were they granted any authority to come out and waive anything. Prior to that, they did not. So mechanically, the one had to accrue to the claimant first. That's highly relevant perhaps to your takings claim. But I don't see where unless at that point they go to the landowner and say, which one do you want? Do you want this one or that one? Then they've got a deal. But they don't. They say, okay, we've determined that you are entitled to compensation. And what we're going to do is we're going to give you a waiver instead. There's no contract. There's no negotiation. There's no one. The landowner doesn't like it. Too bad. He can appeal, just like every other adverse decision. Well, plaintiff by plaintiff will be in different circumstances. One claimant will, in fact, want money. Most claimants, as a matter of reality, really want to be able to do with their land what they want. That's what it's all about. That's exactly right. And if the county came to the landowner and said, which one do you want? Let's work out a deal. Then you'd have a contract. But the county doesn't take account of the landowner's preferences. They say this is what they said under that regime. This is what you get. We've thought about it. And we're not going to give you a choice. We don't care what you prefer. Bam. And look, I don't see where you've got a contract. It's just like sort of harsh reality of government regulation. If your concept of contract is a question of negotiation, then how do you handle a contract of adhesion? No. My idea of contract is that you have a contract. You have a deal. Whether it is adhesion or nonadhesion, whether it is that you actually have a deal, that whether you get a choice or negotiate or anything else, when you have a contract of adhesion, you in fact say, I don't like the terms. I wish I could negotiate. Gosh darn, this is terrible. But I take it. Or you can walk away. It's your choice. Anyway, I think we've explored this at length. Your time is up. I think you'll have time as well, if I remember correctly. Did you want to take another minute for rebuttal or do you want to just let it go on? This is Mr. Keeley, right? Mr. Kiley. Kiley. It's Irish, not German. The only language that sounds like contractual language in the Cochran order is as follows. This is on ER 63-7 at paragraph 6, the last sentence. Quote, Jackson County does not promise claimants that claimants will eventually be able to put the property to any particular use. Unquote. That's the only time the word promise or anything remotely like it is used in this order. I would also point out that the plaintiffs repeatedly below argued that this waiver order document itself constituted the contract. Judge Panner so concluded as a matter of law, and the plaintiffs argued that very same point in their briefs to this Court. The issue of whether there was some other oral or implied promise that I seem to hear in the dialogue today is the first time that's ever come up. Plaintiffs conceded that nothing in Measure 37 gives the landowner any choice. Needless to say, the county agrees. Thank you, Your Honors. Thank you. The case is here. You will stand for a minute. This being the last case on the calendar today, we're adjourned.
judges: Kozinski, Kleinfeld, Ikuta